UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Dee Voigt, Individually and as Representative of the Estate of Peggy Hoffman, Deceased, and on Behalf of all Those Entitled to Recover for the Death of Peggy ·Hoffman, Deceased, under the Texas Wrongful Death Act; | § | |
| *Plaintiffs,* | § | Civil Action No. 3:17-cv-1018 |
| vs. | § | |
| Echo Tours and Charters, LP dba Echo Transportation; TLB Group Inc.; Diamond Tours Inc.; CSX Transportation, Inc.; Louis Ambrose, Jr. and John Does | § | Removed from the District Court of Dallas County, Texas 44th Judicial District |
| *Defendants.* | § | |

**DEFENDANT CSX TRANSPORTATION, INC.'S NOTICE OF REMOVAL**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Please take notice that defendant CSX Transportation, Inc. (hereinafter referred to as "CSXT") hereby removes this action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 with full reservation of any and all defenses and objections. In support of this notice, CSXT submits as follows:

## PROCEDURAL MATTERS

1. On March 8, 2017, a civil action was filed in the District Court of Dallas County, Texas, styled "*Dee Voigt, et al. v. Echo Tours and Charters, et al.*" Cause No.: DC-17-02842. Plaintiffs' first amended petition was filed on March 24, 2017, hereinafter referred to as "the Complaint."

2. The Complaint names as defendants, among others, CSXT.

3. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), in that this Notice of Removal is being filed within thirty (30) days after the first receipt by a defendant, through service, of the Complaint. CSX was served on March 13, 2017.

4. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the removing defendants, which papers include the Complaint, is attached as Exhibit A.

5. The District Court of Dallas County, Texas is located within the district of the United States District Court for the Northern District of Texas.

## FEDERAL QUESTION JURISDICTION

6. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the claims of all plaintiffs because federal question jurisdiction exists for claims arising under the Interstate Commerce Commission Act of 1995 ("ICCTA"), 49 U.S.C. §§ 10101, *et seq.* Accordingly, removal is proper pursuant to 28 U.S.C. §§ 1441 (a), (b), and (c), and under principles of supplemental jurisdiction, 28 U.S.C. §1367.

7. This case stems from a March 7, 2017 collision between a charter bus and a CSXT locomotive at a rail crossing located at the intersection of CSXT rail tracks and Main Street in Biloxi, Mississippi ("the Biloxi crossing").

8. The Complaint takes issue with the Biloxi crossing. It alleges that its geometrical configuration and shape should have been designed, constructed, and/or configured differently, and that operation of a train through a crossing with this one's physical characteristics is a violation of state tort law. Am. Compl., ¶ 4.2 ("The crossing consists of several layers of asphalt patches. These asphalt patches create a steep inclined [sic] or hump. This hump has

been created and gradually grown overtime [sic] by automated CSX Transportation Inc., railroad maintenance practices."); *id.* at ¶ 4.5 ("immobilized by the steep grade at the crossing"); *id.* at ¶ 6.6 (alleging that CSXT had a duty "to maintain the condition of the roadway traversing the crossing and its grade" and "to ensure the crossing was not ultrahazardous").

9. The Complaint's crossing-related allegations can only be understood as asserting that CSXT should have altered the configuration, operation and maintenance of the Biloxi crossing and related rail and structures, or should cease its operations over the crossing, or both. The Complaint thus seeks, through tort doctrines, to regulate CSXT's treatment of the Biloxi crossing, and specifically to restrict how it operates the crossing and how and where CSXT transports. It thus seeks to manage a railroad's decisions in how to run its railroad by dictating how CSXT should manage and operate the Biloxi crossing.

10. Such claims are completely preempted by ICCTA and removable as such.

11. The jurisdictional doctrine of complete preemption is a "corollary" to the well-pleaded complaint rule. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Portage Cty. Bd. Of Comm'rs v. City of Akron*, 12 F. Supp. 2d 693, 698 (N.D. Ohio 1998). Under this corollary, a plaintiff cannot avoid the true federal nature of its claims simply by recasting them as state law causes of action. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-8 (2003). Complete preemption exists where Congress intends a federal statute to completely displace state law claims. *See, e.g., Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (complete preemption under ICCTA as a statute that "so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all").

12. Congress enacted ICCTA and created the Surface Transportation Board (STB) to regulate rail transportation in the United States, and "to implement a federal scheme of minimal

regulation for this intrinsically interstate form of transportation." *Elam*, 635 F.3d at 804 (citation, internal quotation marks and original alteration omitted). With ICCTA, Congress expressly and categorically preempted state law "regulation of rail transportation. 49 U.S.C. § 10501(b).

13. "It is difficult to imagine a broader statement of Congress' intent to preempt regulatory authority over railroad operations" than ICCTA. *CSX Transp. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996). ICCTA's preemptive reach "is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent." *Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001).

14. Rail crossings meet ICCTA's definition of "transportation." They are "facilities" and "property" where "tracks are located," and are "related to the movement or passengers or property" by rail. 49 U.S.C. §§ 10501(b); *In re Katrina Canal Breaches Consol. Litig.*, Civ. A. No. 05-4182, 2007 U.S. Dist. LEXIS 95799, at *123–*124 (E.D. La. Dec. 27, 2007) ("There can be no doubt that a railroad crossing constitutes 'property . . . related to the movement of passengers or property . . . by rail'"); *see also* 49 U.S.C. § 10102(9)(A) (defining "transportation" to include any "facility, instrumentality, or equipment of any kind related to the movement of passengers or property").

15. Design and construction of a railroad crossing is squarely covered by ICCTA:

> The design and construction of a railroad crossing is necessarily inextricably intertwined with the design and construction of the railroad tracks located at the crossing. Additionally, the design and construction of the railroad crossing relates directly to CSXT's rail activity at the crossing. ICCTA makes it clear that the Surface Transportation Board has exclusive jurisdiction over the "construction" of railroad tracks.

*In re Katrina*, 2007 U.S. Dist. LEXIS 95799 at *125.

16. Tort suits are forms of regulation. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992). They can likewise be forms of economic regulation, which is ICCTA's primary focus. *Wis. Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013-1014 (W.D. Wis. 2000) (citing *City of Auburn v. United States*, 154 F.3d 1025, 1030 (9th Cir. 1998)) (ICCTA preempts "all state efforts to regulate rail transportation"); *see also Cedarapids, Inc. v. Chi., Cent. & Pac. R.R. Co.*, 265 F. Supp. 2d 1005, 1013 (N.D. Iowa 2003) ("in enacting the ICCTA, Congress intended to occupy completely the field of state economic regulation of railroads"); *Rushing v. Kan. City S. Ry.*, 194 F. Supp. 2d 493, 498 (S.D. Miss. 2001) (quoting H.R. Rep No. 104-311, at 95-96 (1995), *reprinted in* 1995 U.S.C.C.A.N. 807-08) (discussing the legislative history of the ICCTA as reflecting "the direct and complete preemption of State economic regulation of railroads"); *CSX Transp., Inc.—Pet. for Declaratory Order*, STB Fin. Dkt. No. 34662, 2005 WL 584026, at *9 (Mar. 14, 2005) ("Section 10501(b) is intended to prevent a patchwork of local regulation from unreasonably interfering with interstate commerce.").

17. Plaintiffs' claims, though couched in state law terms, are in essence claims federal in nature, running headlong into the jurisdiction of the federal Surface Transportation Board. *Cf. PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005) ("[C]omplete preemption is jurisdictional in nature and, as such, 'authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims for relief or if the federal issue is initially raised solely as a defense.'").

18. Tort actions that seek to affect the economics of rail transportation or regulate a railroad's operations in the manner found here are completely preempted. *Cf. PCI Transp., Inc.*, 418 F.3d at 540 (finding complete preemption under ICCTA where "injunctive relief PCI seeks would regulate the operation of FWWR's switching yard and would therefore fall squarely"

within ICCTA); *Elam*, 635 F.3d at 807 ("when a plaintiff's tort claim directly attempts to manage or govern a railroad's decisions in the economic realm, that claim 'is either wholly federal or nothing at all.'" (citation omitted)); *see also Rushing*, 194 F. Supp. 2d 493 at 499-500 (where plaintiffs complained of vibrations and noise under state nuisance and negligence theory, claims were actually impermissible attempts to impose economic regulations by instructing defendant on the periods of time in which defendant could operate its switch yard; plaintiffs' claims therefore interfered with rail operations and were completely preempted); *Friberg*, 267 F.3d at 444 (state-imposed "operating limitations" on a railroad were preempted).

19. A court or jury finding of the sort sought in this case would be economic regulation and would directly interfere with CSXT rail operations. It would have CSXT spend money to design, maintain, manage and operate the Biloxi crossing in a manner desired by plaintiffs (not the Surface Transportation Board) and dictated by a court or jury.

20. This would have more than an incidental or remote effect on rail transportation. *See* Declaration of Eric Hendrickson ("Hendrickson Decl.") (Apr. 10, 2017), attached hereto as Exhibit B; Declaration of Jacob Smith ("Smith Decl.") (Apr. 10, 2017), attached hereto as Exhibit C. As Mr. Hendrickson explains in his declaration, if CSXT were forced to stop using the Biloxi line or were required to close the line temporarily to reconstruct the Biloxi crossing, CSXT's rail transport operations would suffer considerably as such a closure would block access to the New Orleans transfer hub, one of only five hubs nationwide. Hendrickson Decl. ¶¶ 6, 8. Any closure could interrupt rail traffic nationwide, and cost CSXT considerable sums in delay, congestion and rerouting, with associated burden on scarce resources. *Id.* ¶ 9. If CSXT were required to reconstruct the Biloxi crossing and others like it within the state of Mississippi, such an endeavor would likely require reconstruction of multiple areas of track and cost CSXT many

millions of dollars. *Id.* ¶¶ 11-14. As Mr. Smith explains in his declaration, the process of closing a public highway-rail crossing requires approval from local government and state agencies and is done through a multi-faceted legal process that can take years. Smith Decl. ¶¶ 6-8.

21. If permitted to proceed, this action would thus "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting ICCTA. *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (citation and internal quotation marks omitted).

22. Plaintiffs' complaint would use state law to regulate CSXT's treatment of the Biloxi crossing, and specifically to restrict how it operates the crossing and how and where CSXT transports. Not only does ICCTA not permit this, but it "completely preempts" it for removal purposes under 28 U.S.C. § 1441(a).

23. Because a central aspect of the case is removable as completely preempted, the balance of the case also belongs in federal court under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367(a); *see also PCI Transp., Inc.*, 418 F.3d at 543 (complete preemption makes entire case removable so long as "a portion of [ ] claims are governed by the ICCTA"); *Elam*, 635 F.3d at 811 (finding supplemental jurisdiction over all plaintiffs' claims arising from a crossing accident because they "arise out of the same common nucleus of operative fact"); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("[R]emoval of Plaintiff's Complaint based upon . . . [complete preemption] was proper and the District Court properly exercised supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367"). Accordingly, removal is proper pursuant to 28 U.S.C. § 1441 (a), (b), and (c).

24. Consent to removal of other defendants is not required. Consent is not required when a removing party faces claims "separate and independent" from claims asserted against other defendants. This exception to the rule of unanimity warrants removal without consent "if [the claim] involve[d] an obligation distinct from the non-removable claims in the case." *State of Tex. V. Walker*, 142 F.3d 813, 817 (5th Cir. 1998); s*ee also Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996). Though the "separate and independent" text has since been removed from the statute, the exception still applies, whether in its original formulation or under the current version of 28 U.S.C. § 1441(c). *See, e.g.*, *Penson Fin. Servs., Inc. v. Golden Summit Inv'rs Grp., Ltd.*, No. 3:12-CV-300-B, 2012 WL 2680667, at *6 (N.D. Tex. July 5, 2012) (recognizing exception to the rule of unanimous consent for effecting removal where "the removed claim is a separate and independent claim under 28 U.S.C. § 1441 (c)").

25. The crossing-related federal claims asserted against CSXT are separate and independent from the claims asserted against the defendant charter bus rental agencies, bus tour agency and bus driver. *See id.* The crossing-related claims against CSXT are asserted only against it, and are separate and independent from plaintiffs' claims against the non-railroad defendants. The removable federal claims against the railroad defendants involve different legal duties, parties, witnesses, and transactions from the other claims comprising the petition, and thus have only been asserted against CSXT in this matter for purposes of 28 U.S.C. § 1441(c). The federal claims fall both within the exception, and within the current version of 28 U.S.C. § 1441(c). *See*, *e.g.*, *Moore v. City of Philadelphia*, No. CIV. A. 12-3823, 2012 WL 3731818, at *4, n. 1 (E.D. Pa. Aug. 29, 2012) (finding that under 28 U.S.C. 1441(c)(2), "if a defendant does not have any claims against him 'that arise under the Constitution, laws, or treaties of the United States,' that defendant need not consent to or join in a removal for the removal to be proper.").

**WHEREFORE**, removing defendants hereby respectfully give notice that the above action, now pending against it in the District Court of Dallas County, Texas, is removed to the United States District Court for the Northern District of Texas.

Respectfully submitted,

By: */s/ John W. Proctor*
John W. Proctor
State Bar No. 16347300
jproctor@browndean.com
BROWN, DEAN, PROCTOR, & HOWELL, L.L.P.
306 West 7th Street, Suite 200
Fort Worth, Texas 76102
Phone: (817) 332-1391
Fax: (817) 870-2427

ATTORNEYS FOR DEFENDANT
CSX TRANSPORTATION, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served upon all known counsel of record by electronic mail and Certified Mail, Return Receipt Requested on April 12, 2017.

**VIA EMAIL** mcwatts@wattsguerra.com
Mikal C. Watts
**VIA EMAIL** fguerra@wattsguerra.com
Francisco Guerra, IV
**VIA EMAIL** pboldt@wattsguerra.com
Paige Boldt
WATTS GUERRA LLP
4 Dominion Dr.
Building 3, Suite 100
San Antonio, Texas 78257

**COUNSEL FOR PLAINTIFF DEE VOIGT, ET AL.; PLAINTIFFS/INTERVENORS AUBREY O. LANDRUM, ET AL; AND PLAINTIFF/INTERVENOR GLADYS JANE FRANK**

**VIA EMAIL** coby@cobywootenlaw.com
Coby L. Wooten
LAW OFFICE OF COBY L. WOOTEN, P.C.
1301 Ballinger Street, Suite 100
Fort Worth, Texas 76102

**COUNSEL FOR PLAINTIFFS/INTERVENORS ANNIE MAY HAVRAN, ET AL.**

**VIA EMAIL** lblue@baronandblue.com
Lisa Blue
BARON & BLUE
25 Highland Park Village
Suite 100-772
Dallas, Texas 75205

**LOCAL COUNSEL FOR PLAINTIFF DEE VOIGT, ET AL.; PLAINTIFFS/INTERVENORS AUBREY O. LANDRUM, ET AL; AND PLAINTIFF/INTERVENOR GLADYS JANE FRANK**

**VIA EMAIL** bas@spivey-law.com
LAW OFFICE OF BROADUS A. SPIVEY
3303 Northland Dr., Suite 205
Austin, Texas 78731

**COUNSEL FOR PLAINTIFF/INTERVENOR MELISSA MESSERLY, INDIVIDUALLY, ET AL.**

**VIA EMAIL** joeturnerpc@gmail.com
Joe Turner
JOSEPH A. TURNER, PC
1504 West Avenue
Austin, Texas 78701

**COUNSEL FOR PLAINTIFF/INTERVENOR MELISSA MESSERLY, INDIVIDUALLY, ET AL.**

VIA EMAIL Robert@hg55.com
VIA EMAIL carrie@hg555.com
Robert Haslam
HASLAM & GALLAGHER
555 South Summit Avenue
Fort Worth, Texas 76104

**COUNSEL FOR PLAINTIFFS/INTERVENORS ANNIE MAY HAVRAN, ET AL**

**VIA EMAIL** tbuzbee@txattorneys.com
Anthony G. Buzbee
**VIA EMAIL** cleavitt@txattorneys.com
Christopher J. Leavitt
THE BUZBEE LAW FIRM
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002

**COUNSEL FOR PLAINTIFFS/INTERVENORS TIM ORR, ET AL.**

**VIA EMAIL** Larry.wilson@lanierlawfirm.com
W. Mark Lanier
Lawrence P. Wilson
THE LANIER LAW FIRM, P.C.
P. O. Box 691448
6810 FM 1960 West (77069)
Houston, Texas 77269-1448

**COUNSEL FOR PLAINTIFF/INTERVENOR KIMBERLY KAY CHAPMAN**

**VIA EMAIL** **Greg.alexander@injuryattorney.com**
Gregory J. Alexander
ALEXANDER LAW FIRM
8866 Gulf Freeway, Suite 520
Houston, Texas 77017

**COUNSEL FOR PLAINTIFF/INTERVENOR KIMBERLY KAY CHAPMAN**

**VIA EMAIL** jross@rossbarneslaw.com
Jeffrey R. Ross
ROSS BARNES LLP
801 E. Campbell Road, Suite 390
Richardson, Texas 75081

**COUNSEL FOR DEFENDANT DIAMOND TOURS, INC.**

**VIA EMAIL** david@prulaw.com
David M. Pruessner
Law Offices of David M. Pruessner
4111 Joshua Lane
Dallas, Texas 75287

**COUNSEL FOR ECHO TOURS AND CHARTERS, LB D/B/A ECHO TRANSPORTATION, TBL GROUP, INC., AND LOUIS AMBROSE, JR.**

**VIA EMAIL** msharp@feesmith.com
Michael P. Sharp
**VIA EMAIL** dkarp@feesmith.com
Daniel A. Karp
**VIA EMAIL** jjohnson@feesmith.com
James E. Johnson
Fee, Smith, Sharp, & Vitullo, LLP
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240

**COUNSEL FOR ECHO TOURS AND CHARTERS, LB D/B/A ECHO TRANSPORTATION, TBL GROUP, INC., AND LOUIS AMBROSE, JR.**

*/s/ John W. Proctor*
John W. Proctor